UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ARETHA WILLIAMS,

                              Plaintiff,                           **REPORT AND**
         - v -                                           **RECOMMENDATION**

CITY OF NEW YORK, et al.,                            CV-09-4167 (JBW)(VVP)

                              Defendants.
----------------------------------------------------------x

       Judge Weinstein has referred this matter to me for a report and recommendation concerning the fees to be awarded, if any, to The Law Office of Jeffrey L. Goldberg P.C. (the "Goldberg Firm") pursuant to a charging lien asserted by that firm under section 475 of the New York Judiciary Law. The Goldberg Firm represented the plaintiff in this action from the commencement of the lawsuit until December 2010 when they were replaced by The Sanders Firm, P.C. The Sanders Firm has served as counsel since that time and negotiated a settlement of this action with the defendants. The Goldberg Firm seeks a portion of the attorneys' fees that have resulted from the settlement.

       The Goldberg Firm and the Sanders Firm have each submitted letter briefs in support of their respective positions and the court held an evidentiary hearing on May 4, 2011 at which Jeffrey L. Goldberg and Eric Sanders each offered testimony and other evidence concerning the services that were rendered by each of the firms during the course of their respective representations of the plaintiff. On the basis of the submissions and the evidence, I make the findings and recommendation below.

       Many of the facts are undisputed. The plaintiff Aretha Williams signed a retainer agreement engaging the Goldberg Firm as her attorneys for this matter on or about October

5, 2007.  Pursuant to the agreement, the plaintiff agreed to pay, and ultimately did pay to the Goldberg Firm the sum of $15,000 as an initiation fee.  Ex. M 1.[1]  The agreement also called for a contingency fee of thirty-three and one-third percent (33 1/3%) of any monies received as a result of settlement.[2]  At the time, Eric Sanders was employed as the managing attorney with the Goldberg Firm.  He had been hired as an associate by the Goldberg Firm some years earlier to develop a practice focusing on employment discrimination, with a particular emphasis on representing police officers.  Under his employment arrangement with the Goldberg Firm, Sanders' compensation consisted of a salary, as well as one-third of the fees obtained by the Goldberg Firm on any case that Sanders brought into the firm.  The plaintiff's retainer agreement with the Goldberg Firm was signed by Eric Sanders on behalf of the Goldberg Firm.  Sanders ultimately left the Goldberg Firm and established the Sanders Firm in early October of 2010, after this action was filed but before it was concluded.

Although the Goldberg Firm was retained in October 2007, this action was not filed until almost two years later on September 28, 2009.  An amended complaint was thereafter filed in early December 2009 before an answer had been served, and the docket reflects that service was accomplished thereafter on a number of defendants including the City of New York.[3]  After extensions of time, answers were ultimately filed by the defendants and an

---

[1] The Exhibits cited in this opinion are those offered at the hearing held on May 4.  The "M" indicates that the exhibit was offered by the Goldberg Firm, the movant on this application for fees.  Only the movant offered exhibits at the hearing.

[2] Unlike many contingency fee arrangements, the contingency fee here was one-third of the entire settlement proceeds without any deductions for costs and litigation expenses.

[3] Both the initial complaint and the amended complaint were drafted and signed by Eric Sanders.

-2-

initial conference was held on June 30, 2010 at which a scheduling order was entered by the court to govern discovery and other pretrial proceedings. The Goldberg Firm participated in one further status conference on September 30, 2010 before the Sanders Firm filed a notice of appearance on December 13, 2010, accompanied by a consent to change counsel signed by the plaintiff. The action was ultimately dismissed in its entirety on February 23, 2011 as a result of a settlement negotiated by the Sanders Firm under which the defendants agreed to pay $131,500 to the plaintiff. Although no retainer agreement between the Sanders Firm and the plaintiff was offered in evidence, the movant does not dispute the assertion by the Sanders Firm that its contingent fee arrangement with the plaintiff was the same as the Goldberg Firm's, i.e., one-third of any monies recovered by settlement.

Under the New York Judiciary Law, an attorney who is discharged without good cause, such as misconduct or abandonment, is entitled to a lien on any recovery obtained by his or her former client. *See* N.Y. Jud. L. § 475; *accord, e.g., Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010); *Lansky v. Easow*, 756 N.Y.S.2d 885, 885-86 (2d Dep't 2003). The lien is "enforceable in federal courts in accordance with its interpretation by New York courts." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998). When a dispute concerning the apportionment of fees arises between the outgoing and incoming attorneys, rather than between the outgoing attorney and the former client, "[t]he outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the

proportionate share of the work performed on the whole case." *Lai Ling Cheng v. Modansky Leasing Co., Inc.*, 73 N.Y.2d 454, 458, 541 N.Y.S.2d 742, 744 (1989) (citations omitted). If the outgoing attorney does not make an election at the time of discharge, the attorney is presumed to have opted for a percentage of the contingent fee. *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 659, 602 N.Y.S.2d 788, 790-91 (1993). As the trial court is in the best position to assess the relevant circumstances, the apportionment decision is committed to the "sound discretion of the trial court . . . based upon factors such as the time and labor required, the difficulty of the questions involved, the skill required to handle the matter, and the attorneys' experience, ability, and reputation." *Ebrahimian v. Long Island R.R.*, 269 A.D.2d 488, 489, 703 N.Y.S.2d 731, 732 (2d Dep't 2000) (citations omitted); *accord, e.g., Cody v. O'Neill*, 498 N.Y.S.2d 315, 315-16 (2d Dep't 1986); *Warren v. Meyers*, 187 Misc.2d 668, 675, 723 N.Y.S.2d 337, 342-43 (N.Y. Sup. Ct. 2001).

There is no evidence or suggestion that the Goldberg Firm was discharged for good cause. Nor is there any suggestion that Sanders coerced the plaintiff to discharge the Goldberg Firm and retain his new firm. Rather, it appears simply that the plaintiff, having come to the Goldberg Firm because of Sanders, opted to transfer her case to him once she found out he had left the firm. The court thus concludes that the Goldberg Firm has a valid charging lien under section 475, and that since the firm did not seek to fix their fee at the time of discharge, the court should apportion the fees obtained based on an assessment of

the relative proportion of work performed by the two firms and taking into account the factors noted above.[4]

Neither firm offered any time sheets or other such records to establish how much time they expended. The court thus must make assumptions based on experience concerning the relative amounts of time and effort that were devoted to the litigation by each of the firms. In assessing the efforts of the Goldberg Firm, the court notes that the Complaint and Amended Complaint are lengthy documents, 29 and 37 pages respectively, with detailed factual allegations concerning the allegedly discriminatory and harassing conduct of the defendants. These documents reflect a painstaking effort not only to investigate the facts through discussions with the plaintiff and perhaps others, but also to draft pleadings that were not simply barebones recitations of the elements of the plaintiff's claims. In addition, the Goldberg Firm offered various documents reflecting work that was performed, including requests for discovery that were propounded as well as letters and other communications with their client and with opposing counsel concerning matters related to the litigation process. Exs. M 4-8. Also offered as exhibits were a scheduling order and calendar entry made by the court reflecting the attendance by an attorney from the Goldberg Firm at the two conferences held with the court while the firm was serving as counsel.

---

[4]In a letter dated May 1, 2011, the Sanders Firm takes the position that Jeffrey L. Goldberg, Esq. is not entitled to any fee in this action because he was never the attorney of record in the action. The argument misunderstands that it is not Jeffrey L. Goldberg, Esq. who is asserting a charging lien, but rather the Law Firm of Jeffrey L. Goldberg, P.C. Although Jeffrey L. Goldberg, Esq. did not appear as attorney of record, the pleadings disclose that Jeffrey L. Goldberg, P.C. were the attorneys for the plaintiff from the outset of the action until replaced by the Sanders Firm.

Although the Sanders Firm did not offer any exhibits, through the testimony of Eric Sanders the firm established that in the two-and-a-half months or so that the Sanders Firm served as counsel prior to the settlement, Sanders had meetings with his client to gather information and documents in order to respond to the defendants' discovery requests,[5] he prepared and served responses to those requests, and engaged in various discussions with the defendants' counsel that were ultimately successful in achieving the settlement. In addition, Sanders participated in one telephonic conference conducted by the court after the Sanders Firm entered the action.

The information before the court establishes that, of the work done by the Goldberg Firm, three tasks contributed significantly to the advancement of the plaintiff's case – investigating the facts, drafting the complaint and amended complaint, and propounding discovery requests. The remaining work, although not insignificant, consisted essentially of ministerial tasks that did not require any particular expertise or experience. No responses to discovery requests were served, and no depositions were taken. The work done by the Sanders Firm, although significantly shorter in duration, included two tasks that advanced the case – responding to the defendants' discovery requests and negotiating the settlement. The settlement, which produced a substantial recovery for the plaintiff, was entirely attributable to the expertise and experience of Sanders, skills that the Goldberg Firm largely lacked once

---

[5]The requests to which the Sanders Firm responded on behalf of the plaintiff are an attachment to the letter found at Exhibit M 7.

he left the firm.[6] Moreover, Sanders' prior involvement with the case while at the Goldberg Firm gave him a factual understanding of the case and of his client that led to a more prompt resolution of the matter than would otherwise have occurred. His expertise and prior experience thus contributed more to the outcome than is reflected by the relatively short amount of time the Sanders Firm devoted to handling the matter.

Based on the above considerations, I conclude that the contingent fee award should be apportioned to provide 80% to the Goldberg Firm and 20% to the Sanders Firm. As the contingent fee amounts to $43,833.33 (one-third of the settlement amount of $131,500), the Goldberg Firm's portion of the fee would be $35,066.66 and the Sanders Firm's portion would be $8,766.67. However, because Eric Sanders's employment relationship with the Goldberg Firm entitles him to one-third of the fees obtained by the firm on cases that he brought to the firm, Eric Sanders individually is entitled to one-third of the Goldberg Firm's portion of the contingent fee, which equals $11,688.89, as well as one-third of the $15,000 initiation fee, which equals $5,000. Thus, after offsetting those additional amounts against

---

[6]Testimony at the hearing established that when Sanders left the Goldberg Firm, only one associate remained who had any experience litigating discrimination cases, and her efforts had been directed entirely by Sanders. The principal of the Goldberg Firm, Jeffrey Goldberg, had no experience handling such matters as his practice is devoted solely to pension and social security matters.

the Goldberg Firm's portion of the fee,[7] I recommend that the Goldberg Firm should receive a net amount of $18,377.77 in satisfaction of their charging lien.

\* \* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2nd Cir. 2002); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

                                                                     Respectfully Recommended,

                                                                     *Viktor V. Pohorelsky*
                                                                     VIKTOR V. POHORELSKY
                                                                     United States Magistrate Judge

Dated:    Brooklyn, New York
             May 10, 2011

---

[7]Offsetting these amounts is supported by Judge Spatt's decision in *Alana Smith v. County of Nassau*, Dkt. No. 08-CV-5222 (E.D.N.Y. Feb. 17, 2011), which recognized Sanders's right to retain one-third of the Goldberg Firm's fees in resolving a similar fee dispute between the same firms. The Goldberg Firm has urged this court to follow that decision. See Avallone Letter, Apr. 19, 2011 [D.E. 40] and Avallone Letter, Apr. 26, 2011 [D.E. 42]. Although the Sanders Firm disagreed with the ultimate result in *Smith*, they endorse that portion of the decision recognizing Sanders's right to one-third of any fees obtained by the Goldberg Firm on cases Sanders brought to the firm.